Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
DIVERSITY LAW GROUP, P.C.
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Edward W. Choi, Esq. SBN 211334
Law Offices of Choi & Associates
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Telephone: (213) 381-1515
Facsimile: (213) 465-4885
Email: edward.choi@calaw.biz

Alex Cha, State Bar No. 208051
alex@alexchalaw.com
Law Offices of Alex Cha
1055 W 7th St., Fl. 28
Los Angeles, CA 90017
(213) 351-3513
F:(213) 351-3514

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| EMMY SONG, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THC – ORANGE COUNTY, INC., a California Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 8:17-cv-00965-JLS-DFM<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          March 1, 2019<br>Time:          10:30 a.m.<br>Location:    10A<br>Judge:        Hon. Josephine L. Staton |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND APPROVAL OF PAGA SETTLEMENT**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 1, 2019 at 10:30 a.m., or as soon thereafter as the matter can be heard in Courtroom 10A of the United States District Court, Central District of California, Southern Division, located at 411 W. Fourth St., Santa Ana, CA, 92701, before the Honorable Josephine L. Staton, Plaintiff EMMY SONG ("Plaintiff") and Defendant THC – ORANGE COUNTY, INC. ("Defendant") (Defendant and Plaintiff collectively referred to as the "Parties") jointly will and hereby do move this Court for an Order preliminarily approving the proposed class action settlement and PAGA settlement. Specifically, the Parties respectfully requests that the Court order as follows:

1.    Grant preliminary approval of the proposed class action settlement;

2.    Grant conditional certification of the proposed settlement class;

3.    Authorize the mailing of the proposed notice to the class of the settlement;

4.    Issue an order granting approval of the PAGA settlement and distribution of the PAGA Payment Checks with class notice, as well as dismissing the PAGA claims asserted in the Action with prejudice as to the Plaintiff and all PAGA Releasees; and

5.    Schedule a "fairness hearing," i.e., a hearing on the final approval of the settlement.

The Parties make this motion on the grounds that the proposed settlement is fair and within the range of possible final approval. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and Approval of PAGA settlement, the attached Memorandum of Points and Authorities in Support, the accompanying Declarations of Edward W. Choi, Larry W. Lee, and Emmy Song, the accompanying Class and Representative Action Settlement Agreement and Stipulation ("Settlement" or "Settlement Agreement"), any oral argument of counsel, the complete files and records in the above-

captioned matter, and such additional matters as the Court may consider.

DATED: January 11, 2019         LAW OFFICES OF CHOI & ASSOCIATES, P.C.


                                By:   /S/ EDWARD W. CHOI, ESQ.
                                      Edward W. Choi, Esq.
                                      Attorney for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND APPROVAL OF PAGA SETTLEMENT**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION AND SUMMARY OF AGREEMENT ...........................1

   A.  Summary of The Claim at Issue and the Current Settlement ..................2

   B.  Procedural History ...........................................................................4

   C.  Terms of the Settlement Agreement ....................................................16

   D.  The Court has Already Certified the Classes and Therefore Should
       Certify the Class as Defined in the Settlement Agreement for the Same
       Reasons ...........................................................................................6

   E.  The Settlement is Fair, Reasonable and Adequate..................................7

II.  LEGAL ANALYSIS .............................................................................7

   A.  Two-Step Approval Process...............................................................7

   B.  The Standard for Preliminary Approval ...............................................8

   C.  The Settlement is Fair and Reasonable and Not the Result of Fraud or
       Collusion .......................................................................................10

      1.  The Settlement May be Presumed Fair and Reasonable......................10

         a.  Experience of Class Counsel ..................................................10

         b.  Investigation and Discovery Prior to Settlement .......................11

      2.  The Settlement is Fair, Reasonable and Adequate ..........................13

         a.  Risk of Continued Litigation...................................................13

         b.  The Settlement is Within the Range of Reasonableness..................14

         c.  The Complexity, Expense, and Likely Duration of Continued
             Litigation Against the Settling Defendant Favors Approval..............15

         d.  Non-Admission of Liability by Defendant .................................15

   D.  Attorneys' Fees, Costs, and Class Representative Enhancement............16

   E.  The PAGA Settlement is Fair, Reasonable and Adequate ....................167

III. CONCLUSION..................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AHMC Healthcare, Inc., et al. v. Superior Court* (2018),
  24 Cal. App. 5th 1014.........................................................................................7

*Arias v. Superior Court,*
  46 Cal. 4th 969 (2009) ..................................................................................5, 17

*Baumann v. Chase Inv. Servs. Corp,*
  747 F.3d 1117, 1122 (9th Cir. Cal. 2014) .....................................................17

*Boyd v. Bechtel Corp.,*
  485 F. Supp. 610, 616-17 (N.D. Cal. 1979) ..................................................13

*Cook v. Niedert,*
  142 F.3d 1004, 1015 (7th Cir. 1998) .............................................................16

*Donohue v. AMN Services, LLC* (2018),
  29 Cal. App. 5th 1068.........................................................................................7

*Gaskill v. Gordon,*
  160 F.3d 361, 363 (7th Cir. 1998) .................................................................16

*Girsh v. Jepson,*
  521 F.2d 153, 157 (3d Cir. 1975) .............................................................13, 15

*Hammon v. Barry,*
  752 F. Supp. 1087, 1093-1094 (D.D.C. 1990) .............................................10

*In re Chicken Antitrust Litig.,*
  560 F. Supp. 957, 962 (N.D. Ga. 1980).........................................................10

*In re General Motors Corp.,*
  55 F.3d 768, 806 (3d Cir. 1995) ....................................................................13

*Laffitte v. Robert Half Int'l,*
  1 Cal. 5th 480, 503 (Aug. 11, 2016) ...............................................................16

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*,

    834 F.2d 677, 682 (7th Cir. 1987) ...................................................10

*National Rural Telecomms. Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523, 528 (C.D. Cal. 2004)......................................10, 15

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*,

    688 F.2d 615, 625 (9th Cir. 1982) ..............................................8, 9, 15

*Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*,

    323 F. Supp. 364, 372 (E.D. Pa. 1970).............................................9

*Priddy v. Edelman*,

    883 F.2d 438, 447 (6th Cir. 1989) ...................................................10

*Sakkab v. Luxottica Retail N. Am., Inc.*,

    803 F.3d 425 (9th Cir. 2015) .............................................................5

*Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*,

    79 F.R.D. 571, 576 (E.D. Pa. 1978) ...............................................10

*Steinberg v. Carey*

    470 F. Supp. 471, 478 (S.D.N.Y. 1979) .........................................10

*Util. Reform Project v. Bonneville Power Admin.*,

    869 F.2d 437, 443 (9th Cir. 1989) .....................................................8

*Van Bronkhorst v. Safeco Corp.*,

    529 F.2d 943, 950 (9th Cir. 1976) ...................................................15

*Van Vranken v. Atlantic Richfield Co.*,

    901 F. Supp. 294, 299-300 (N.D. Cal. 1995) .................................16

*Young v. Katz*,

    447 F.2d 431, 433-34 (5th Cir. 1971).............................................15

iii

**Statutes**

CA B&P Code §17200, *et seq.* ...................................................................2

Labor Code § 201-203 ...............................................................................2

Labor Code § 226...............................................................................2, 12

Labor Code § 226(a) ..................................................................................3

Labor Code § 510 .......................................................................................2

Labor Code § 558 .......................................................................................2

Labor Code § 1194 .....................................................................................2

Labor Code § 1197 .....................................................................................2

Labor Code § 1197.1 ..................................................................................2

Labor Code § 2698, *et seq.* .................................................. 1-6, 17, 18

Labor Code § 2699.............................................................................5, 6, 17

Labor Code § 2802.....................................................................................2

**Rules**

Federal Rule of Civil Procedure 23 ...........................................................6

**Other Authorities**

4 Conte & Newberg, Newberg on Class Actions,

    §11.26 (4th ed. 2010)....................................................8, 10, 14, 15

5 James Wm. Moore et al., Moore's Federal Practice §23.165 (3d ed. 2010) .........9

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632 ............... 7-9, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF AGREEMENT

Plaintiff EMMY SONG ("Plaintiff" or "Class Representative") seeks preliminary approval of the Class and Representative Action Settlement Agreement and Stipulation ("Settlement" or "Settlement Agreement") that has been reached in the above-captioned matter.

Specifically, Plaintiff and Defendant THC – ORANGE COUNTY, INC. ("Defendant") (Defendant and Plaintiff collectively referred to as the "Parties") have reached a class-wide resolution of the claims alleged in this lawsuit on behalf of "all persons who were employed by THC-Orange County, Inc. at any time as non-exempt employees from June 6, 2013 through the Preliminary Approval Date" (Settlement Agreement ¶ 2.4), as well as a settlement of Plaintiff's representative Private Attorney General Act ("PAGA") on behalf of the State of California and the group of aggrieved employees defined as individuals "employed by THC-Orange County, Inc. at any time as non-exempt employees from May 31, 2016 through and including January 10, 2019." (Settlement Agreement ¶ 2.29).

The terms of the settlement provide that Defendant shall pay a gross settlement fund of Four Hundred Forty Thousand Dollars ($440,000.00). (Settlement Agreement ¶2.19).  The parties currently estimate and project that after deduction for claims administration costs, attorneys' fees, costs, PAGA penalties, and Plaintiff's representative enhancement, the net settlement fund of approximately $185,334.00 will be distributed between an approximately 5,065 Class Members (approximately 3,400 of whom are also PAGA Releasees) based upon the number of shifts each class member worked for Defendant.  (Settlement Agreement ¶3.1(f)).  Moreover, this is a **non-reversionary settlement**, such that the entire settlement amount will be distributed and no remaining amounts, *i.e.*, unclaimed funds, will revert back to Defendant.

Accordingly, through this Motion, the Parties respectfully request

preliminary approval of the Settlement Agreement.

## A.   Summary of the Claims at Issue and the Current Settlement

On June 6, 2017, Plaintiff, on behalf of herself and all others similarly situated, commenced the Action by filing a Class Action Complaint against Defendant in the United States District Court, Central District of California, alleging the following causes of action: (1) failure to pay minimum and overtime wages (Cal. Labor Code §§ 510, 558, 1194, 1197, 1197.1); (2) failure to provide accurate wage statements (Cal. Labor Code § 226); (3) violations of the Unfair Practices Act (Cal. Bus. & Prof. Code §§ 17200, *et seq*.) and; (4) waiting time penalties (Cal. Labor Code §§ 201-203).  Additionally, Plaintiff brought an individual failure to reimburse (Cal. Labor Code § 2802) claim on behalf of herself.  (Settlement ¶1.1)

On or about May 31, 2017, Plaintiff provided written notice to the California Labor and Workforce Development Agency ("LWDA") pursuant to the Private Attorneys General Act of 2004 (Cal. Labor Code §§ 2698 *et seq*.) ("Plaintiff's May 31, 2017 LWDA Letter") and, following the expiration of the statutory waiting period, Plaintiff filed the First Amended Class Action Complaint on October 2, 2017, re-alleging each of the causes of action in the original complaint and alleging the following additional cause of action: (6) violations of the Private Attorneys General Act of 2004 ("PAGA") (Cal. Labor Code §§ 2698, et seq.).  (*Id.*)  On January 11, 2019, Plaintiff provided a supplemental notice to the LWDA ("Plaintiff's January 11, 2019 Supplemental LWDA Letter").

Specifically, Plaintiff alleged that she and other non-exempt employees were not provided with proper wages due to Defendant's policy of non-exempt employees to clock in more than 7 minutes before the shift start time, but when employees did clock in and start working 5 minutes before the shift start time, they were not paid for such hours worked.  (Declaration of Edward W. Choi ("Choi Decl.") ¶ 5) In addition, Plaintiff also alleged that whenever overtime wages were

paid, the corresponding wage statements failed to show the accurate rate of overtime wages, in violation of Labor Code § 226(a).  (*Id.*) Defendant claims that the allegations have no merit and do not give rise to liability.  (*Id.* at ¶ 6).

On April 27, 2018, Plaintiff filed her Motion for Class Certification, which was ultimately granted by this Court on August 6, 2018.  Dkt. No. 49.

After the class was certified, and after months of negotiations, the Parties reached the current settlement.  The negotiations were hard fought and contentious. As a result thereof, the parties have reached the current settlement, which provides for a total settlement sum of Four Hundred Forty Thousand Dollars ($440,000.00), inclusive of payments to settlement class members, class representative enhancements, attorneys' fees and costs, payroll taxes, PAGA payments to the State of California and to alleged aggrieved employees, and administration costs.

Pursuant to the terms of the Settlement Agreement, the Settlement Awards (after deduction of attorneys' fees, costs, enhancement fees, PAGA payments, employer-side tax contributions, and costs of administration) will be calculated by taking the individual class member's total "Shifts Worked " and dividing it by the total Shifts Worked for the entire class.  (Settlement Agreement ¶3.1 (c) & (f)).

The Class Members can be ascertained from Defendant's payroll records. (Lee Decl. ¶8).  As of the date of Preliminary Approval, the Parties anticipate the Class will consist of approximately 5,065 individuals (based on data collected in September 2018).  (*Id.*).

Finally, no claim forms will be necessary for any Class Member to participate in the settlement.  Thus, any Class Member who does not opt-out from this Settlement will automatically be issued their share of the class settlement proceeds.

A portion of the settlement will go towards the settlement of the PAGA claims on behalf of the PAGA alleged aggrieved employees.  As explained in more detail below, while class members can opt out of and object to the class settlement,

no such options exist with respect to the PAGA portion of the settlement as PAGA claims are not class actions, and only require a one-step approval process (unlike the two-step preliminary and final approval for class actions).

**B.      Procedural History**

Plaintiff filed the initial class action Complaint against Defendant on June 6, 2017 in US District Court, Central District. On or about May 31, 2017, Plaintiff provided written notice to the California LWDA pursuant to PAGA and, following the expiration of the statutory waiting period, Plaintiff filed the First Amended Class Action Complaint on October 2, 2017, re-alleging each of the causes of action in the original complaint and alleging the following additional cause of action: (6) violations of the PAGA.

Defendant answered Plaintiff's original complaint on August 3, 2017, and answered the First Amended Class Action Complaint on October 20, 2017. (Settlement Agreement ¶1.2).

On April 27, 2018, Plaintiff filed her Motion for Class Certification, which was heard by this Court on July 13, 2018.  During the oral argument of the Motion for Class Certification, the Court commented that it believed Plaintiff's wage statement claims may lack merit, and in light of that, whether class certification was even proper.  (Declaration of Larry W. Lee ("Lee Decl.") ¶ 5) Based thereon, the Court required the Parties to provide supplemental briefing whether a claim that the Court is inclined to decide against on the merits can nevertheless be certified.  (*Id.*)  After the submission of supplemental briefs, this Court granted Plaintiff's Motion for Class Certification in full on August 6, 2018, which included two classes: (a) The Rounding Class defined as all current and former California non-exempt employees of Defendant who worked at any time during the period of June 6, 2013 through the present; and (b) The Wage Statement Class defined as all current and former California non-exempt employees of Defendant who received wage statements for overtime wages at any time from June 6, 2016, through the

4

present.  Dkt. No. 49.

The Parties attended mediation on July 2, 2018 before mediator Robert Kaplan.  The matter did not settle on that date, but with Mr. Kaplan's assistance, the Parties continued to negotiate for months, and in November 2018, they ultimately reached the current settlement. (Lee Decl. ¶ 6).

## C.    Terms of the Settlement Agreement

As discussed above, the entire settlement is being settled for a total gross settlement amount of $440,000.00, the entirety of which is non-reversionary and not subject to any claims-made basis.  (Settlement Agreement ¶2.19).  This amount includes attorneys' fees of up to $146,666.00, reimbursement of costs of up to $25,000, a class representative enhancement of up to $10,000.00, settlement administration fees of up to $40,000.00, the and settlement of the PAGA claims for $44,000.00.  After the reduction of such amounts, i.e., the Net Settlement Amount, the remaining funds shall be distributed to the settlement class members based on the number of shifts worked by each settlement class member during the settlement class period of June 6, 2013 through the date of preliminary approval of this settlement.

With respect to the settlement of the PAGA claims for $44,000.00, pursuant to PAGA's statutory requirements (Cal. Labor Code § 2699(i)), 75% or $33,000 shall be paid to the California Labor & Workforce Development Agency ("LWDA"), while the remaining 25% or $11,000 shall be paid to the PAGA aggrieved employees, which is defined as individuals "employed by THC-Orange County, Inc. at any time as non-exempt employees from May 31, 2016 through and including January 10, 2019." (Settlement Agreement ¶ 2.29).  Further, as PAGA representative claims are not class actions, the usual two-step preliminary and final approval process for class settlements are not required.  *Arias v. Superior Court*, 46 Cal. 4th 969 (2009); *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015).  Rather, for PAGA settlements, there is simply a one-step approval process

by the Court.  Cal. Labor Code 2699(l)(2).  Thus, concurrent with this current Motion for Preliminary Approval, Plaintiff also seeks approval of the PAGA settlement.

**D.    The Court has Already Certified the Classes and Therefore Should Certify the Class as Defined in the Settlement Agreement for the Same Reasons**

As stated above, on August 6, 2018, the Court granted Plaintiff's class certification motion and certified the Rounding Class and Wage Statement classes set forth above.  (Doc No. 49).  The Settlement Agreement defines the Class more broadly as: "all persons who were employed by THC-Orange County, Inc. at any time as non-exempt employees from June 6, 2013 through and including the date the Preliminary Approval Order and Order Approving PAGA Settlement is entered by the Court."  (Settlement Agreement, ¶ 2.4)  However, the classes certified by the Court on August 6, 2018 and the Class as defined in the Settlement Agreement are coextensive, with the sole difference being that the classes certified by the Court run through the date of class certification, i.e., August 6, 2018, while the Class defined in the Settlement Agreement runs will run through the date of Preliminary Approval.  *Id.*; Dkt. 49.

Here, the same class members, class data, legal arguments, investigation, etc. are implicated by the classes already certified by the Court and the Class as defined in the Settlement Agreement, except that the latter Class will encompass current and former non-exempt employees between August 6, 2018 and the date of Preliminary Approval.  Thus, for purposes of this Motion, the Court need not re-engage in an analysis of whether the class at issue can be certified for settlement purposes as this Court has already found that the elements of Rule 23 of the Federal Rules of Civil Procedure have been met, even under the rigorous, no-settlement, context.  Thus, Plaintiff will not repeat any arguments as to why the settlement class should be certified and the Parties respectfully request that the

Court conditionally certify the Class for settlement purposes as defined in the Settlement Agreement.

### E. The Settlement is Fair, Reasonable, and Adequate

Based on their own respective independent investigations and evaluations, the Parties and their respective counsel are of the opinion that settlement for the consideration and on the terms set forth in their Settlement is fair, reasonable, and adequate and is in the best interests of the Class and the Defendant in light of all known facts and circumstances and the expenses and risks inherent in litigation. (Lee Decl. ¶¶13-18; Choi Decl. ¶ 11).

Specifically, during Plaintiff's Motion for Class Certification this Court highly questioned the merits of Plaintiff's wage statement claim.  Based on the Court's clear warnings at the Class Certification hearing that the class would lose on the merits of the case, Plaintiff believes that the current settlement is in the best interest of the class.  Similarly, two recent California Court of Appeal decisions have held that rounding practices similar to Defendant's rounding practices were legal.  *See AHMC Healthcare, Inc., et al. v. Superior Court* (2018) 24 Cal. App. 5th 1014; *Donohue v. AMN Services, LLC* (2018) 29 Cal. App. 5th 1068.

Thus, instead of the Class Members ultimately receiving nothing, this is a **non-reversionary settlement**, such that the Class Members will be entitled to receive a substantial monetary recovery.

## II. LEGAL ANALYSIS

### A. Two-Step Approval Process

Any settlement of class litigation must be reviewed and approved by the Court.  This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review and approval by the court after notice has been distributed to the class members for their comment or objections. The Manual for Complex Litigation, Fourth states:

Review of a proposed class action settlement generally

> involves two hearings.  First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation.  In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties....  The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632.

Thus, the preliminary approval by the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements. As Professor Newberg comments, "[t]he strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary.  The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing."  4 Conte & Newberg, Newberg on Class Actions, § 11.26 (4th ed. 2010). Accordingly, a court should grant preliminary approval of a class action settlement where it is within the "range of reasonableness." Here, the Parties have reached such an agreement and have submitted it to the Court in connection with this filing.

**B.     The Standard for Preliminary Approval**

As a matter of public policy, settlement is a strongly-favored method for resolving disputes.  *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is especially true in complex class actions such as this case.  *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable and adequate.  Rather, that

8

decision is made only at the final approval stage, after class members have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. 5 James Wm. Moore et al., Moore's Federal Practice §23.165 (3d ed. 2010). In considering the settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice*, 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement ... may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp*., 323 F. Supp. 364, 372 (E.D. Pa. 1970).

"The judge should raise questions at the preliminary hearing and perhaps seek an independent review if there are reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." MCL § 21.633.

Here, the proposed settlement does not pose such issues. This was a highly-contentious litigation with the Parties each being represented by highly-competent counsel. As discussed above and the declarations submitted herewith, the Parties engaged in substantial investigation and discovery related to the claims and defenses alleged in this case. Further, the proposed settlement was reached after Plaintiff moved for, and prevailed upon, her class certification motion. Finally, the Parties utilized the assistance of an experienced mediator and reached this settlement only after substantial arms-length negotiations between the Parties.

As detailed herein, the proposed Settlement satisfies the standard for preliminary approval as it is well within the range of possible approval and there are no grounds to doubt its fairness. Counsel for Plaintiff and Defendant have extensive experience in employment law, particularly wage and hour litigation, and reached a settlement only after mediation and extensive arm's-length negotiations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.      The Settlement is Fair and Reasonable and Not the Result of Fraud Or Collusion**

**1.      The Settlement May be Presumed Fair and Reasonable**

Courts presume the absence of fraud or collusion in the negotiation of settlement unless evidence to the contrary is offered.  *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co*., 834 F.2d 677, 682 (7th Cir. 1987); *In re Chicken Antitrust Litig*., 560 F. Supp. 957, 962 (N.D. Ga. 1980).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *National Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979); *Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here, they have been involved in extensive litigation, informal and formal discovery, appear to be competent, and have experience with this type of litigation. Newberg on Class Actions at §11.47; *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 528 ("So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement . . . and 'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (Citations omitted).

**a.      Experience of Class Counsel**

Here, both counsel for Plaintiff and Defendant have a great deal of experience in wage and hour class action litigation.  Plaintiff's attorneys have been approved as class counsel in a number of other wage/hour class actions and have

litigated class action cases for years. (Lee Decl. ¶¶ 20-22; Choi Decl. ¶ 16). Moreover, Plaintiff's Counsel conducted an extensive investigation of the factual allegations involved in this case. (Lee Decl. ¶7; Choi Decl. ¶8). Thus, based upon such experience and knowledge of the current case, Plaintiff's Counsel believe that the current Settlement is fair, reasonable and adequate. (Lee Decl. ¶ 15; Choi Decl. ¶ 11).

### b.    Investigation and Discovery Prior to Settlement

Class Counsel conducted significant discovery, research and investigation in furtherance of the prosecution of the Action. (Settlement Agreement ¶1.3) This discovery, investigation, research and prosecution included, among other things, (a) multiple conferences with Plaintiff and Defendant's counsel; (b) inspection and analysis of hundreds of pages of documents and other information produced by Plaintiff and Defendant formally and informally during the litigation of the Action and in preparation for mediation (including class time records and payroll records); (c) deposition of Defendant's Rule 30(b)(6) Person Most Knowledgeable, Kathy Lickteig, Director of Payroll Projects, covering a myriad of topics, including Defendant's practice and procedures regarding recording hours worked, payment of wages, rounding, itemized wage statements, and calculation and payment of overtime and minimum wages; (e) analysis of the numerous legal positions taken by Defendant; (f) investigation into the viability of class treatment of the claims asserted in the Action; (g) analysis of potential class-wide damages, including reviewing class time records and payroll records and analyzing information sufficient to understand Defendant's potential defenses thereto; (h) research of the applicable law with respect to the claims asserted in the Complaint as well as the potential defenses thereto; (i) research and preparation of extensive briefing regarding class certification issues; and (j) assembling and analyzing extensive data and information for calculating damages.

Plaintiff was provided with data for a 15% random sampling of time entries and payroll records for the putative class members.  (Lee Decl. ¶16) Plaintiff hired an expert to process and analyze this data, and then extrapolate total maximum potential liability to the entire putative class for the entire class period.  (*Id.*)

Thus, Plaintiff received the class data necessary to analyze and determine liability and potential exposure on the amount of penalties and damages owed to the class. Based thereon, the following represents Plaintiff's analysis of Defendant's potential liability.

**Plaintiff's Rounding Claim**:  Across all of the 777 employees analyzed, Plaintiff's expert calculated the net difference in earnings based on Actual versus Rounded Timestamps to be $75,330. (Lee Decl. ¶16) Additionally, among the subset of 412 underpaid employees, the net difference in earnings is determined by Plaintiff to be $191,702.  (*Id.*) Extrapolated to the entire class, Plaintiff believes the total exposure was $1,232,616.72. (*Id.*)

**Plaintiff's Wage Statement Claim:**  Based on 46,040 wage statements that were issued to the putative class members that contained the separate overtime rates of pay, Plaintiff estimated the potential Labor Code §226 exposure was estimated at $4,354,200.00.  (*Id.*)

Defendant contends that there were no damages to the class and that it would have prevailed had the matter proceeded forward to a Motion for Summary Judgment.  Indeed, the Court commented at the Class Certification hearing that the Court believed that both Plaintiff's wage statement claim did not have merit and further questioned whether Plaintiff could prevail on the merits of her unpaid wage claim.  Given the Court's clear warnings that Plaintiff and the Class Members would ultimately receiving nothing for the wage statement claim, and in light of the recent California Court of Appeals' decisions regarding rounding practices Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts

and circumstances and the risks inherent in litigation.  (Lee Decl. ¶ 15; Choi Decl. ¶ 11).

### 2.    The Settlement is Fair, Reasonable and Adequate

The settlement for each participating Class Member is fair, reasonable and adequate, given the inherent risk of litigation, the risk of appeals, the risks in an area where it is argued that the law is unsettled, and the costs of pursuing such litigation.

### a.    Risk of Continued Litigation

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  *In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); MCL § 21.62 at 316.

Here, the Court provided clear warnings that Plaintiff and the Class Members were likely to receiving nothing.  Thus, the Settlement affords fair relief to the Class, given that it avoids significant legal and factual battles that otherwise may have prevented the Class from obtaining any recovery at all.  While Plaintiff's attorneys believe that the Class claims are meritorious, they are experienced and realistic, and understand that the outcome of a trial, and the outcome of any appeals that would inevitably follow if Plaintiff prevailed, are inherently uncertain in terms of both outcome and duration.  Moreover, Defendant intended to file a motion for full and/or partial summary judgment disposing of the class claim had this case not resolved through settlement, which would also have likely generated appeals by the Parties.

Given these uncertainties through this class action settlement the risks of

13

continued litigation have been eliminated while providing a substantial benefit to
the class.

### b. The Settlement is Within the Range of Reasonableness

The standard of review for class settlements is whether the Settlement is
within a range of reasonableness.  As Professor Newberg comments:

> Recognizing that there may always be a difference of
> opinion as to the appropriate value of settlement, the
> courts have refused to substitute their judgment for that
> of the proponents. Instead the courts have reviewed
> settlements with the intent of determining whether they
> are within a range of reasonableness.…

4 Newberg on Class Actions, at §11.45.

Here, the settlement fund is non-reversionary, such that no monies will
revert back to Defendant.  Assuming that every class member elects to participate
in the settlement, each class member will receive his or her pro rata share, with
each person receiving on average an approximate amount of $36.59.  Further, the
settlement fund will be paid out entirely in cash through settlement checks (as
opposed to a voucher, coupon, etc.).  In addition, as set forth in the Settlement
Agreement, the release for Settlement Class Members is limited to only the causes
of action that that were alleged in the operative complaint or reasonably could have
been alleged based on the facts and legal theories contained in the operative
complaint and Plaintiff's LWDA letters.  (Settlement Agreement ¶ 4.3).  For these
reasons, and for the reasons set forth above relating to the total liability and the
risks of prevailing on the theories of liability alleged, Plaintiff believes that the
current Settlement is fair, reasonable, and adequate.

///

///

14

c.      **The Complexity, Expense, and Likely Duration of Continued Litigation Against the Settling Defendant Favors Approval**

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157. In applying this factor, the Court must weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

The Settlement provides to all Class Members fair relief in a prompt and efficient manner. As stated above, the Court provided clear warning that on the merits, Plaintiff's wage statement claim may ultimately fail. Based thereon, Defendant would likely have moved for Motion for Summary Judgment, which if granted would have led to another potential appeal.

The idea of balancing a fair recovery now, with settlement dollars being paid out now, as opposed to a years-long litigation and appeals process regarding various potential issues, is a significant factor in favor of approval of the class settlement. *DIRECTV*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); 4 Newberg on Class Actions, at § 11.41.

d.      **Non-Admission of Liability by Defendant**

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit. Defendant maintains that they have complied at all times with all California wage and hour laws. Because of such denial, if this case

15

1   is not resolved, it will likely continue to be a long and protracted litigation.

2       **D.**    **Attorneys' Fees, Costs, and Class Representative Enhancement**

3       Pursuant to the terms of the Agreement, and without opposition from

4   Defendant, Plaintiff will also be entitled to request enhancement amounts, up to a

5   maximum of Ten Thousand Dollars ($10,000.00) to Plaintiff, which is to

6   compensate the Plaintiff for the actions the Plaintiff has taken to protect the

7   interests of the class, the degree to which the class has benefited from those actions

8   and the amount of time and effort she expended in pursuing the litigation. *Cook v.*

9   *Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Van Vranken v. Atlantic Richfield*

10  *Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995).

11      The California Supreme Court issued its ruling regarding the award of

12  attorney's fees in wage and hour class action settlements. Under California law,

13  the award of attorneys' fees in common fund wage and hour class action

14  settlements is proper under the percentage method. *See Laffitte v. Robert Half*

15  *Int'l*, 1 Cal. 5th 480, 503 (Aug. 11, 2016) ("We join the overwhelming majority of

16  federal and state courts in holding that when class action litigation establishes a

17  monetary fund for the benefit of the class members, and the trial court in its

18  equitable powers awards class counsel a fee out of that fund, the court may

19  determine the amount of a reasonable fee by choosing an appropriate percentage of

20  the fund created."). Under the percentage of the fund method, the Court's objective

21  remains to "mimic the market" in fixing a reasonable fee. *See Gaskill v. Gordon*,

22  160 F.3d 361, 363 (7th Cir. 1998) (J. Posner) ("When a fee is set by a court rather

23  than by contract, the object is to set it at a level that will approximate what the

24  market will set... The judge, in other words, is trying to mimic the market in legal

25  services.").

26      Class Counsel will seek an award of attorneys' fees of not more than 33% of

27  the Maximum Settlement Amount and reimbursement of actual costs of up to

28  $25,000.00. Class counsel will file their Motion for Attorney's Fees and Costs and

Plaintiff's enhancement two weeks before the opt-out and objection deadline.

### E. The PAGA Settlement is Fair, Reasonable and Adequate

By way of this Motion, the parties also seek approval of the PAGA Settlement, including the PAGA Payment, distribution plan of the PAGA Payment, and the release of the PAGA Claims on the terms set forth in the Parties' Settlement Agreement. California Labor Code section 2699(l)(2) provides that the court shall review and approve any settlement of any civil action filed pursuant to PAGA. The California Supreme Court has held that an employee who sues an employer under PAGA need not satisfy class action requirements. *Arias v. Superior Court*, 46 Cal. 4th 969, 974 (2009). For example, "PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action." *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. Cal. 2014).

The Settlement allocates $44,000 (or 10%) of the Gross Settlement Fund as PAGA penalties sought as part of the proposed PAGA Settlement. Pursuant to Labor Code Section 2699(i), 75% of these penalties are to be paid to the LWDA. Accordingly, the Settlement provides for $33,000 to be paid to the State of California from the Gross Settlement Fund. The remaining $11,000 will be paid out of the Gross Settlement Fund and will be distributed to all PAGA Releasees on a pro rata basis, as set forth in the Settlement Agreement. (Settlement Agreement, ¶ 3.1(c).)

Under the proposed PAGA Settlement, the PAGA Payment Checks will be distributed to PAGA Releasees with the Class Notice, which describes the PAGA Settlement. The PAGA Releasees will not be required to submit a claim form in order to be issued a check for their share of the PAGA Payment and will not have the opportunity to opt out of, or object to, the PAGA Payment and release of the PAGA Claims.

///

This proposed PAGA Settlement is fair, reasonable, and adequate to all concerned, and not the product of fraud, collusion, or overreaching. The proposed PAGA Settlement is the product of informed negotiations. As described above, prior to negotiating and reaching final agreement on the proposed settlement in this case, Plaintiff's counsel performed significant work to investigate, research, and analyze the claims, defenses, legal and factual issues, and potential recovery in this case, including pre- and post-filing investigation, legal research and analysis. Prior to entering into any settlement discussions, Plaintiff's counsel also carefully evaluated the PAGA Claims at issue in the Action. As noted above, this Court cautioned that Plaintiff would not prevail on the merits of her underlying Labor Code claims. Thus, the PAGA claim, which is derivative in nature, is also potentially in jeopardy. The settlement was the result of arm's length settlement negotiations facilitated by a well-known mediator and represents a fair resolution in light of the risks associated with further litigating the claims.

Accordingly, based on the terms set forth in the Parties' Settlement Agreement, Plaintiff respectfully requests the Court approve the PAGA Settlement, including the PAGA Payment, distribution plan of the PAGA Payment, and the release of the PAGA Claims, dismiss the PAGA Claims asserted in the Action with prejudice as to the Plaintiff and all PAGA Releasees, and permanently enjoin all PAGA Releasees from pursuing or seeking to reopen the PAGA Claims against the Released Parties.

## III.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant preliminary approval for the proposed class action settlement, approval of the PAGA settlement, and schedule a "fairness hearing," i.e. a hearing on the final approval of the settlement.

///

///

18

DATED: January 11, 2019          LAW OFFICES OF CHOI & ASSOCIATES, P.C.


By:   /S/ EDWARD W. CHOI, ESQ.
      Edward W. Choi, Esq.
      Attorney for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PAGA SETTLEMENT**